United States District Court
Western District of Louisiana
Monroe Division

| | | |
|---|---|---|
| **Chism Supply, LLC** | * | Case No. _____ |
|     **Plaintiff** | * | |
| | * | Judge: _____ |
| -v- | * | |
| | * | Mag. Judge: _____ |
| **J-M Manufacturing, Inc.** | * | |
|     **Defendant** | * | **JURY TRIAL DEMAND** |

COMPLAINT FOR CIVIL DAMAGES
FOR BREACH OF CONTRACT AND UNFAIR TRADE PRACTICES

PARTIES

Chism Supply, LLC ("Plaintiff"), a Louisiana Limited Liability Company having its principal place of business in Ouachita Parish, Louisiana, represented herein by undersigned counsel, respectfully represents:

1. Made Defendant herein is J-M Manufacturing, Inc., ("Defendant") a Delaware corporation with its principal place of business in the State of California, authorized to and doing business in the State of Louisiana.

JURISDICTION

2. Jurisdiction is proper in this court because the amount in controversy exceeds $75,000 exclusive of all costs and interest, and both Plaintiff and Defendant are citizens of different states. *28 U.S.C. 1332* therefore provides federal diversity jurisdiction.

VENUE

3. Venue is proper in this court because Plaintiff is domiciled within this district and the acts complained of caused damages in this district through acts directed by Defendant from the

State of California into Ouachita Parish, Louisiana. Additionally, Defendant breached its contract with Plaintiff, performance of which contract required and resulted in performance of the contract in Ouachita Parish, Louisiana.

## STATEMENT OF THE CLAIM

4. Plaintiff is a plumbing and utility wholesale supplier maintaining its principal place of business at 400 North Fourth Street, Monroe, Louisiana.

5. Defendant is a manufacturer of plumbing and utility piping and maintains its principal place of business at 5200 West Century Blvd, Los Angeles, California.

6. Plaintiff and Defendant have engaged in business transactions with each other for between six and seven years with Plaintiff purchasing and Defendant manufacturing and selling piping products.

7. During or about April 2016, Defendant became aware of a City of Monroe major public works job, designated as job MR27A, being let for public works in the Monroe area. Defendant's sales person, Patra Sukphraee, contacted Plaintiff's sales manager, Jacob Chism, requesting to bid the piping materials for the job. Plaintiff agreed to and did accept pricing from Defendant on the job.

8. The material list for the relevant part of the job consisted of 10 items and Defendant's quote to Plaintiff on those 10 items was $367,950.00 and was dated April 5, 2016.

9. In due course, job MR27A was awarded to the Ouachita Parish construction company, Jabar Corporation, which placed its order for all of the piping items, *except items 1, 4 and 9 on Defendants quote*, with Plaintiff.  Items 1, 4 and 9 were not awarded to Plaintiff initially because Plaintiff's quote on those items was not competitive with another quote from another vendor. Defendant was informed of this and re-quoted its items on May 11, 2016, segregating items 1, 4

and 9 on the quote sheet. Plaintiff in turn placed its partial order for those job materials with Defendant, who agreed to manufacture and deliver those materials.

10. In due course, Plaintiff was awarded items 1, 4 and 9 and placed the order for those items with Defendant as well.

11. Defendant agreed that Plaintiff could purchase all of the materials and pay for them in truck load quantities, or "incrementally."

12. Plaintiff submitted an order for the first materials needed for the job and paid for that order with a check in the amount of $50,000.00 to pay in advance for two truckload shipments which cost only $46,368.

13. After Defendant received the $50,000, it then refused to ship the materials because Plaintiff had not placed the entire order for the "entire job." Consequently, Plaintiff placed the order for the entire job with Defendant.

14. Plaintiff then requested release of the items of the order that had been placed with Defendant for which Plaintiff had pre-paid. Defendant refused unless additional advance payments were made by Plaintiff, contrary to Defendant's agreement with Plaintiff to ship incremental orders and accept incremental payments from Plaintiff.

15. Plaintiff made additional advance payments in efforts to have product released to its customer. Defendant received those payments but would still not release and ship all of the product it was to release and ship against those payments.

16. Defendant falsely represented that it would honor its agreement if Plaintiff made substantial additional advance payments. Plaintiff did so. Defendant retained those advance payments and refused to ship the product that had been paid for by those payments. In doing so, Defendant engaged in a circuitous charade of referring Plaintiff to different people within

Defendant's company resulting in needless delays and multiple falsified excuses to fraudulently induce Plaintiff to send funds to the Defendant with apparently no intention of honoring the entire agreement it had made with Plaintiff.

## RELIEF DEMANDED

16. As a consequence of Defendant's fraudulent conduct and misrepresentations, Plaintiff sent Defendant the following amounts on the dates indicated:

| DATE | CHECK # | AMOUNT |
|---|---|---|
| 6/2/16 | 8397 | 50,000.00 |
| 7/6/16 | 8553 | 44,966.40 |
| 9/9/16 | 8656 | 27,885.00 |
| 9/12/16 | 8662 | 24,572.00 |
| 9/14/16 | 8671 | 27,464.50 |
| 9/30/16 | 8706 | 30,000.00 |
| Total | | 204,887.90 |

17. Against the payments listed above, Defendant only shipped product represented by the following invoices, on the dates and in the amounts indicated:

| DATE | INVOICE | AMOUNT |
|---|---|---|
| 7/14/16 | PTUG6639342 | 23,184.00 |
| 7/15/16 | PTUG6639342 | 50,459.60 |
| 9/20/16 | PTUG6650531 | 4,747.50 |
| 9/20/16 | PTUG6639342 | 21,643.50 |
| Total | | 100,034.60 |

18. The difference between the $204,887.90 paid and the $100,034.60 in product shipped is $104,853.30. Additional costs were incurred in the amount of $15,000, being the difference in the Defendant's quoted price on the material received and the price Defendant charged for the material received from Defendant, plus Plaintiff's increased costs thus far from substitute

vendors, all due to the delay caused by Defendants wrongful conduct. Plaintiff will incur additional excess costs beyond that quoted by Defendant, in the amount of approximately $41,300, for the portion of the job yet to be performed. Pipe costs are driven by oil costs since this pipe is a petroleum derivative. Plaintiff thus itemizes its special damages, at this time, at $156,334.60 [$100,034.60+$15,000.00+$41,300.00] plus attorney fees and costs. Plaintiff also has sustained general damages to be proven at trial, such damages being damage to business reputation, credit standing and loss of goodwill.

## LEGAL THEORIES SUPPORTING RELIEF DEMANDED

19. Plaintiff believes that discovery will reveal that the conduct of Defendant was and continues to be fraudulent, involved interstate commerce, utilized federal banking wires, utilized the U. S. Postal Service, involved a "public funds contract" and involved multiple fraudulent predicate acts committed by phone calls and email transmissions. Plaintiff thus reserves its right to amend this Complaint to allege violations of the federal RICO statutes, if discovery reveals sufficient evidence to invoke the provisions of those statutes.

20. Defendant's conduct constitutes unfair and deceptive trade practices under Louisiana law entitling Plaintiff to recover all actual and consequential damages, attorney fees, costs, and, under certain circumstances, treble damages.

21. Defendant's conduct also constitutes bad faith breach of contract under Louisiana law entitling Plaintiff to recover all actual and consequential damages including attorney fees and costs.

22. Pursuant to *La. Civil Code article 3546*, since the ill intent complained of was conceived, fostered and implemented from within the State of California, and since the entity causing the injury is deemed 'domiciled' either in the State of California or the State of

Delaware, and further since both the State of California and the State of Delaware allow the recovery of punitive or exemplary damages, Plaintiff desires and is entitled to the recovery of such damages from Defendant in this proceeding.

23. Plaintiff desires and is entitled to trial by jury as to all issues in this proceeding.

WHEREFORE, PLAINTIFF PRAYS:

That after all due proceedings are had, there be judgment herein in favor of Plaintiff and against Defendant for all damages reasonable in the premises, including special damages in the amount of $156,334.60 or such additional amounts as may be proven at the trial of this case; consequential damages, reasonable attorney fees, all costs of this litigation and that all such damages be trebled if warranted under the evidence.

FURTHER PRAYS that pursuant to *La. Civil Code article 3546*, which allows for the recovery of punitive or exemplary damages in cases such as this, Plaintiff recover such punitive or exemplary damages from Defendant in this proceeding as are deemed reasonable and appropriate in the premises.

FURTHER PRAYS that its right to amend this Complaint to allege violations of the federal RICO statutes be preserved unto Plaintiff, if discovery reveals sufficient evidence to invoke the provisions of those statutes.

FURTHER PRAYS for trial by jury on all issues herein.

FURTHER PRAYS for all other just and equitable relief appropriate in the premises.

Respectfully submitted,

DOLLAR LAW FIRM, LLC
301 Hudson Lane (71201)
Post Office Box 14310
Monroe, LA 71207-4310
Telephone: 318/387-9000
Facsimile: 318/387-9976
Email: johnny.dollar@thedollarlawfirm.com

By:/s/*Johnny E. Dollar*
       Johnny E. Dollar, T.A.
       Bar Roll Number 5004
Counsel for Plaintiff